United States District Court
Southern District of Texas
**ENTERED**
October 24, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| ANH VAN DANG, | § | |
| | § | |
| Debtor. | § | CIVIL ACTION NO. H-15-3342 |
| | § | |
| In Re: | § | |
| | § | |
| HONG BICH CHAU, | § | ADVERSARY NO. 15-3089 |
| | § | |
| Debtor. | § | |
| | § | |
| ANH VAN DANG and HONG BICH CHAU, | § | ADVERSARY NO. 15-3088 |
| | § | |
| Defendant–Appellants, | § | |
| | § | |
| VS. | § | |
| | § | |
| TREVOR GILBERT, *et al.*, | § | |
| | § | |
| Plaintiff–Appellees. | § | |

**MEMORANDUM AND OPINION**

The bankruptcy debtors in this consolidated action, Anh Van Dang and Hong Bich Chau, appeal from the bankruptcy court's grant of summary judgment. Trevor and Jorja Gilbert, the plaintiffs in the adversary proceedings, had sued Dang and Chau in state court, alleging fraud and unconscionable conduct in the debtors' sale of a house to the Gilberts. The jury awarded the Gilberts over $1.5 million, and Dang and Chau filed separate chapter 7 cases. The Gilberts brought adversary actions to declare the judgment nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). The bankruptcy court granted the Gilberts' motion for summary judgment, finding the total damages award nondischargeable under § 523(a)(2)(A).

Dang and Chau raise one issue on appeal: whether the bankruptcy court properly granted

1

summary judgment by giving preclusive effect to the state-court judgment on the nondischargeability of the judgment debt.[1] Preclusion issues are often difficult. The complexity is increased when, as here, the judgment could rest independently on either of two jury findings. The bankruptcy court wrestled with these difficult issues. But they are issues on which reasonable minds can and do differ. Based on the record and the applicable law, this court reverses the bankruptcy court's order and remand the action for further proceedings consistent with this opinion. The reasons are set out below.

**I.      Background**

On October 2, 2009, the Gilberts bought a house in Houston from Dang and Chau, who were living together on the property. The Gilberts paid $145,000. (Adv. No. 15-3088, Docket Entry No. 11, Ex. B, at 2). On September 17, 2011, the Gilberts sued Dang and Chau in state court for failing to disclose significant water and mold damage. The Gilberts presented evidence that Dang and Chau had made four separate insurance claims for burst pipes in 2009 and had received $54,000 from their insurer. The Gilberts alleged that Dang and Chau spent none of the money on repairs and disclosed none of the damage at the time of the sale. (*Id.* at 2–3).

---

[1] Dang and Chau initially identified four issues on appeal:
   a.   Whether the bankruptcy court erred in granting summary judgment on the findings of the jury in the state court.
   b.   Whether the bankruptcy court erred in applying *In re Schwager*, 121 F.3d 177 (5th Cir. 1997), in finding the debt was not discharged under 11 U.S.C. § 523.
   c.   Whether the bankruptcy court erred in considering the judgment of a nonbankruptcy court issued afer the debtors' bankruptcy court filing when granting summary judgment that the debt was not discharged.
   d.   Whether the bankruptcy court had exclusive jurisdiction over 11 U.S.C. § 523 after the bankruptcy case was filed.
(Adv. No. 15-3088, Docket Entry No. 24; Adv. No. 15-3089, Docket Entry No. 27).
   The first two issues are identical. The propriety of granting summary judgment turns on *Schwager*'s application to preclusion. The other two issues are waived because they were not raised in the bankruptcy court and cannot be raised for the first time on appeal of that court's summary judgment, *see* FED. R. CIV. P. 56, and because they were not briefed. (*See* Docket Entry Nos. 7, 9).

Dang and Chau demanded a jury. After a week-long trial, the jury awarded the Gilberts $150,000 to repair the house; $54,000 to compensate for its lost use; $200,000 for past mental anguish; $80,000 for future mental anguish; $205,000 for attorney's fees; and $900,000 in exemplary damages "because the conduct was committed knowingly." (Adv. No. 15-3088, Docket Entry No. 11, Ex. C at 9–14). The total verdict was $1,589,000.

The jury returned its verdict in November 2014. In December, before the state court entered final judgment, Dang and Chau filed separate chapter 7 cases. (Adv. No. 15-3088, Docket Entry No. 15 at 7). The Gilberts filed their adversary actions against Dang and Chau in March 2015, seeking a judgment declaring the state-court judgment debt nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). (*Id.*). Over Dang and Chau's objections, the bankruptcy court lifted the stay in both cases to allow for the entry of the final state-court judgment. That occurred on July 16, 2015. (*Id.*). The Gilberts moved for summary judgment in August 2015, arguing that the state-court judgment was preclusive and required the bankruptcy court to find that the judgment debt resulted from fraud and was nondischargeable. (*Id.* at 7–8). The bankruptcy court denied summary judgment on the § 523(a)(6) issue of wilful and malicious conduct but granted it on the § 523(a)(2)(A) issue of false pretenses and fraud. (*Id*. at 26–27). Dang and Chau appealed.

## II. The Legal Standards for Review and Nondischargeability

"[T]raditional appellate standards" apply to a district court's review on an appeal from a bankruptcy court's judgment or order under 28 U.S.C. § 158(a). *Stern v. Marshall*, 564 U.S. 462, 475, 131 S.Ct. 2594 (2011). Because the bankruptcy court had the constitutional authority to adjudicate the plaintiffs' state-law claims, this court reviews the bankruptcy court's conclusions of law de novo and findings of fact for clear error. *See, e.g.*, *In re Ahern Enters., Inc.*, 507 F.3d 817, 820 (5th Cir. 2007).

3

A bankruptcy discharge is intended to provide a debtor with a fresh start "unhampered by the pressure and discouragement of existing debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991) (internal quotation omitted). "The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress that the creditor's interest in recovering full payment of debts in these categories outweighs the debtors' interest in a complete fresh start." *Cohen v. de la Cruz*, 523 U.S. 213, 222, 118 S.Ct. 1212 (1998) (quoting *Grogan*, 498 U.S. at 287). Under § 523(a)(6), debts obtained by "willful and malicious injury by the debtor to another entity or to the property of another entity" are not dischargeable. 11 U.S.C. § 523(a)(6). Under § 523(a)(2)(A) debts obtained by "false pretenses, a false representation, or actual fraud" are not dischargeable. 11 U.S.C. § 523(a)(2)(A).

The Fifth Circuit applies "different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation." *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001). False pretenses or representation requires a creditor to prove a "knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party." *In re Holdaway*, 388 B.R. 767, 772 (Bankr. S.D. Tex. 2008) (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995); *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992); *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)). Actual fraud requires a creditor to prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representation with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations." *Id.* at 773 (quoting *RecoverEdge*, 44 F.3d at 1293).

Issue preclusion, or collateral estoppel, applies to nondischargeability findings under § 523(a). *Grogan*, 498 U.S. at 285, 111 S.Ct. 654. A bankruptcy court looks to the preclusion rules in the state where the judgment was rendered. *In re Plunk*, 481 F.3d 302, 307 (5th Cir. 2007). In

4

Texas, issue preclusion requires a party to establish that: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Mann v. Old Republic Nat. Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App. Houston 2008) (no pet.).

In analyzing the second prong, whether the facts were essential to the judgment, Texas follows the RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment i., which states that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 722 (Tex. 1990). "The rationale for this rule is that an alternative may not have been as rigorously considered as it would have been if necessary to the result, and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld." *Id.* When a jury awards damages on alternative grounds, issue preclusion does not apply to either ground. In that circumstance, a bankruptcy court must hold an evidentiary hearing to decide dischargeability and apportion damages if some result from a nondischargeable debt. *In re Schwager*, 121 F.3d 177, 184 (5th Cir. 1997).

### III. Analysis

The jury in the state-court litigation answered the following specific questions in its verdict:

- Question 1 asked if Dang and Chau engaged in any "false, misleading, or deceptive act or practice." The jury answered "Yes" as to both Dang and Chau.

- Question 2 asked if Dang and Chau engaged in any "unconscionable action." The jury answered "Yes" as to both Dang and Chau.

- Question 3 asked if any person who engaged "in the conduct that you found in response to

> Question Nos. 1 or 2, above," did so "knowingly or intentionally." The jury answered "Yes" as to both Dang and Chau and as to both "knowingly" and "intentionally."

- Question 4 asked if Dang and Chau committed fraud. The jury answered "Yes" as to both Dang and Chau.

- Question 5 asked if Dang and Chau committed statutory fraud, which lacked an element of knowing or reckless disregard of falsity listed for fraud in Question 4. The jury answered "Yes" as to both Dang and Chau.

- Question 7 asked "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate Trevor and Jorja Gilbert for their damages" if "your answer to Question Nos. 1, 2, 4, or 5 was 'Yes' for any party." The jury answered with the damages verdict detailed above.

- Question 10 asked if Dang and Chau were actually aware of the falsity of their representations at issue in Question 5 on statutory fraud. The jury did not answer the question.

(Adv. No. 15-3088, Docket Entry No. 11, Ex. C).

As the bankruptcy court correctly noted, unconscionable conduct under the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.50(a)(3), does not necessarily satisfy the elements of 11 U.S.C. § 523(a)(2)(A), because "[i]ntent to deceive the consumer is not required in order to maintain a cause of action for unconscionable conduct." *In re Barrington*, 183 B.R. 754, 761 (Bankr. W.D. Tex. 1995); (Adv. No. 15-3088, Docket Entry No. 15 at 19). Question 3 asked the jury to decide whether the defendants knowingly or intentionally engaged in deceptive practices under DTPA § 17.46(b) *or* in unconscionable conduct under DTPA § 17.50(a)(3). The jury's affirmative answer does not specify which violation the defendants knowingly and intentionally committed.

6

Without a specific finding of an intentional violation, damages awarded for unconscionable conduct, the subject of Question 2, are dischargeable in bankruptcy. *In re Barrington*, 183 B.R. at 761.

Dang and Chau argue that statutory fraud, TEX. BUS. & COM. CODE § 27.01, is another basis for the jury award that makes the damages dischargeable. (Docket Entry Nos. 7, 9). The bankruptcy court did not explain why the damages for statutory fraud under § 27.01, covered in Questions 5 and 10, would be nondischargeable. The court apparently treated Texas statutory fraud and common-law fraud in the same way. (*See* Adv. No. 15-3088, Docket Entry No. 15 at 23 n.7) (noting that the jury found that Dang and Chau "committed fraud in their answers to Question No. 4 and Question No. 5"). Under Texas's DTPA § 27.01, a plaintiff need not establish the defendant's actual awareness of the falsity of the representations if he seeks only actual damages, not exemplary damages. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F.Supp.2d 798, 806–07 (S.D. Tex. 2009). The jury here awarded $900,000 in exemplary damages but did not answer Question 10, which asked whether Dang or Chau, or both, committed statutory fraud with actual awareness of the falsity of their representations. Without a specific finding of actual awareness, damages awarded for statutory fraud, the subject of Question 5, are dischargeable in bankruptcy.

The jury returned a conjunctive award based on both dischargeable and nondischargeable damages. Unconscionable conduct without a specific finding of knowledge or intent and statutory fraud without a specific finding of actual awareness do not satisfy 11 U.S.C. § 523(a) and are dischargeable in a bankruptcy proceeding. Common-law fraud and fraudulent nondisclosure under the DTPA § 17.46 do satisfy the elements of § 523(a) and cannot be discharged. Recognizing this, the bankruptcy court reasoned that "the alternative determinations present in the jury charge and the Final Judgment would prevent the application of collateral estoppel to this dischargeability dispute pending before this Court." (Adv. No. 15-3088, Docket Entry No. 15 at 20). The bankruptcy court

7

nevertheless applied collateral estoppel and set out three reasons for holding that all the damages awarded in the state-court judgment were nondischargeable.

The bankruptcy court first reasoned that "the Final Judgment is quite specific. While it incorporates all of the jury findings by reference, it explicitly states that the Debtors are liable for 'knowing and intentional violations of the Texas Deceptive Trade Practices Act . . . .' This language leaves no doubt the Final Judgment allocated the Plaintiffs' *entire* award only to the DTPA claim." (*Id*. at 17) (emphasis original).

Second, citing *Eagle Properties*, 807 S.W.2d at 722, the bankruptcy court ruled that this case falls under the Texas "rigorously considered" exception to the Restatement rule. When it is apparent that the trial court "rigorously considered" one of the alternative grounds for decision, by "carefully reviewing each contention," that ground may be considered "'essential' to its judgment for the purposes of preclusion by collateral estoppel." *Eagle Properties*, 807 S.W.2d at 722; *see also In re West Hills Park Joint Venture*, 587 F.App'x 89, 92 n.2 (5th Cir. 2014) (noting Texas's "rigorously considered" exception). The bankruptcy court reasoned that "[t]here can be no doubt that the jury, following a week-long trial, found that the Debtors, knowingly and intentionally, made a material misrepresentation which the Plaintiffs relied upon to their detriment." (Adv. No. 15-3088, Docket Entry No. 15 at 21).

Third, the bankruptcy court applied collateral estoppel for reasons of fairness and administrability. Dang and Chau, the court reasoned, fully and fairly litigated their liability for knowingly misrepresenting the house's condition. (*Id*. at 22). ("To hold a trial in this Court would be giving the Debtors the classic 'second bite of the apple.'"). They—not the Gilberts—demanded the jury that awarded the exemplary damages. (*Id*. at 21). The bankruptcy court "believe[d] that it would be extremely difficult, if not impossible, to find that a portion of the Final Judgment is due

to unconscionable actions and a portion of the Final Judgment is due to fraudulent conduct." (*Id.* at 23). The bankruptcy court distinguished the alternative-judgment cases in this circuit on the basis that they involved alternatives less intertwined than those involved in this case. *Schwager*, for instance, involved a judgment of defalcation with an alternative finding of breach of a partnership agreement, "whereas fraudulent behavior and unconscionable behavior are tied to the hip and cannot be easily separated." (*Id.* at 24) (citing *In re Schwager*, 121 F.3d at 183).

These arguments do not move this case beyond the clear rule in *Schwager* that a conjunctive award is not preclusive as to any independent basis for the award standing alone. 121 F.3d at 183. When a state-court judgment does not contain sufficiently detailed findings to meet the federal nondischargeability test, the court should look beyond the judgment and examine the jury instructions and evidence produced in the state-court proceedings that support the judgment. *In re Shuler*, 722 F.2d 1253, 1257–58 (5th Cir. 1984); *In re Tomlin*, 2005 WL 6440629 (Bankr. N.D. Tex. Dec. 20, 2005). Disjunctive jury instructions in state-court judgments make it difficult for a bankruptcy court to give preclusive effect to that judgment in deciding whether the judgment debt is nondischargable. *See, e.g., In re Tobman*, 107 B.R. 20 (S.D.N.Y. 1989) (no preclusion for § 523(a)(2)(A) determination when certain misrepresentations qualified for discharge while others did not); *Go Partners, Ltd. v. Poynor*, 2001 WL 167828 (N.D. Tex. Jan. 18, 2001 (no preclusion for § 523(a)(2)(A) determination for conjunctive award on breach of contract and deceptive practices). This issue arises most often when § 523(a)(6) exempts debts obtained by willful and malicious misconduct from discharge but state courts have asked the jury whether there was willful, malicious *or* reckless misconduct. *See In re DeVoll*, 266 B.R. 81 (Bankr. N.D. Tex. 2001); *Jenkins v. IBD, Inc.*, 489 B.R. 587 (D. Kan. 2013); *In re Martin*, 130 B.R. 930 (Bankr. N.D. Ill. 1991); *In re Bachinski*, 393 B.R. 522 (Bankr. S.D. Ohio 2008).

This court differs from the bankruptcy court's analysis in a critical area. Based on the record and applicable law, the bankruptcy court should not have relied on the conclusory statement in the state court's final judgment that Dang and Chau committed "knowing and intentional violations of the Texas Deceptive Trade Practices Act" to determine that the entire judgment debt was nondischargeable. (Adv. No. 15-3088, Docket Entry No. 11, Ex. D). The final judgment included no specific findings of knowledge or intent and did not cite the DTPA provisions the defendants violated. *See id*. Looking beyond the judgment to the jury instructions makes the nature of the award clear. Question 7 asked the jury to award damages for the combination of false pretenses, unconscionable conduct, actual fraud, and statutory fraud, without a specific finding of actual awareness of statutory fraud. Two bases of the award exempt damages from discharge, and two do not. The bankruptcy court had to review the rest of the evidentiary record or to hold an evidentiary hearing on the issues of causation and apportionment (if any) of the damages. *See Schwager*, 121 F.3d at 184.

The conjunctive jury findings make the "rigorously considered" exception of *Eagle Properties* inapplicable. In the judgment in *FDIC v. Eagle*, the state court issued a detailed and reasoned opinion finding that certain parties did not fraudulently induce Eagle to enter the transaction at issue. The state court noted that even if fraudulent inducement had been present, the FDIC's lack of knowledge of the fraud would prevent recovery. The Texas Supreme Court ruled that giving preclusive effect to the fraudulent inducement claim in a subsequent case was appropriate. 807 S.W.2d at 722.

*Eagles Properties* concerned alternative reasons to dismiss a claim, not a conjunctive

damages award.² Here, neither the jury verdict nor the state-court judgment included specific findings on whether Dang and Chau's intentional fraud on its own supported the entire damage award. The case is within the *Schwager* rule. In *Schwager*, decided after *Eagle Properties*, "the jury was asked in a single question to award damages for *either* breach of duty *or* breach of [a] partnership agreement." 121 F.3d at 183 (emphasis original). The Fifth Circuit ruled that "neither ground was essential to the judgment awarding these damages . . . because the award can be upheld on either basis." *Id*.

The bankruptcy court's careful work to distinguish *Schwager* is ultimately not persuasive. *Schwager*, the bankruptcy court wrote, "involved *only two* alternate findings," while this case "contains three subquestions, *all of which would lead to nondischargeability*—versus only a single question outside the realm of § 523." (Adv. No. 15-3088, Docket Entry No. 15 at 22) (emphasis original). The bankruptcy court counted statutory fraud as one of the bases for nondischargeability, even though there was no scienter determination for that claim. The number of alternative grounds for the award does not make the case for issue preclusion stronger. More alternative bases makes the conjunctive nature of the award apparent and accords with the Restatement's comment that any single ground for the award may not have been considered sufficient on its own. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. i; *see also In re Waco Town Square Partners*, 2013 WL

---

² At the same time, Dang and Chau's reliance on *Eagle Properties* does not support their argument. *Eagle Properties* noted that the Fifth Circuit applies the Restatement's alternative basis rule against preclusion in the context of "offensive collateral estoppel." The court in *Eagle Properties* permitted preclusion under the Fifth Circuit rule in part because the preclusion was asserted defensively. 807 S.W. 2d at 722. Dang and Chau argue that this is a case of offensive collateral estoppel, so the policy against preclusion is all the stronger. (Docket Entry No. 9). But the Texas court made clear that this difference mattered only in applying federal preclusion rules, not state rules. *See Eagle Properties*, 807 S.W.2d at 722. Because a Texas court issued the judgment at issue here, state preclusion rules apply. *See In re Plunk*, 481 F.3d at 207. Under Texas law, asserting collateral estoppel in a declaratory action, such as the adversary proceedings here, is not "offensive." *See Mann*, 975 S.W.2d at 351.

11

1748944, *4 (Bankr. S.D. Tex. Apr. 23, 2013) ("Comment i appreciates that there will be instances where the balance favors preclusion because an issue is fully and vigorously litigated, but determines that the interests of predictability and simplicity favor a uniform rule of no collateral estoppel effect when a decision is based on alternate grounds.").

Finally, although this court acknowledges the difficulty of apportioning a jury's damages award, the task is not so difficult to require setting aside the *Schwager* rule. At least in this case, certain clear lines can be drawn. A plaintiff need not prove a knowing or intentional violation of § 17.50(a)(3) (unconscionable conduct) or § 27.01 (statutory fraud), so long as the plaintiff seeks only actual rather than exemplary damages. *In re Enron*, 623 F.Supp.2d at 806–07; *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002). Section 17.50 of DTPA permits recovery of damages for mental anguish "[i]f the trier of fact finds that the conduct of the defendant was committed knowingly," and exemplary damages up to three times the award of economic and mental anguish damages "if the trier of fact finds the conduct was committed intentionally." TEX. BUS. & COM. CODE § 17.50(b)(1). The jury's $900,000 award for exemplary damages and $280,000 award for mental anguish satisfy the elements of § 523(a)(2)(A) for false misrepresentations or actual fraud. The only remaining question is how much, if any, of the $204,000 awarded for repairs and lost use of the home, and of the $205,000 awarded for attorney's fees, may have been caused by Dang and Chau's unintentional unconscionable conduct or statutory fraud. Here, as in *Schwager*, the bankruptcy court must redetermine "the dischargeability issues, with specific, independent factual findings." 121 F.3d at 184.

The redetermination need not be burdensome. It does not allow the debtors, or the bankruptcy court, to relitigate the state-court case from the beginning. Even though the final judgment cannot support the issue preclusion the Gilberts seek, the preclusion rules continue to apply

to the matters litigated in the state-court action. Indeed, much of the work involved to determine nondischargeability has already been done in the bankruptcy court's opinion on summary judgment. But rather than giving preclusive effect to the jury findings, the court must make "specific, independent factual findings," most of which are likely to be in the record from the state-court action. *In re Schwager*, 121 F.3d at 184.

## IV. Conclusion

The bankruptcy court's order of October 30, 2015, is reversed. The case is remanded to the bankruptcy court to make specific factual findings on causation and any apportionment of dischargeable actual damages awarded by the state jury.

SIGNED on October 24, 2016, at Houston, Texas.

                              Lee H. Rosenthal
                              United States District Judge